**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BELINDA HENSON

               Plaintiff,

      v.                         Civil Action No. <u>1:19-cv-2734</u>

HOWARD UNIVERSITY, et al.

               Defendants.

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff's Complaint should be dismissed for failure to state a claim for relief under Fed.

R. Civ. P. 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1).

**I.     INTRODUCTION**

Plaintiff Henson is a former administrative employee at the Howard University Faculty

Practice plan, who claims, incredibly, that during and after her employment at Howard, the

University, along with a former administrator (Marie Newman) and former IT director (Alfred

Michael) conspired to violate her privacy and "hack" her personal electronic devices at home and

at work.   In support of these bizarre claims, she has provided pages and pages of conclusory

allegations, and a handful of documents which are dated a year after her departure from Howard,

which she claims show that information from her personal accounts was tampered with or deleted.

Her ravings clearly show a lack of understanding of Howard's rights with respect to its own

computers and systems, the elements of her common law tort claims and the Federal Wiretap Act.

As is set forth more fully below, the Court should reject the Complaint it its entirety, and dismiss all claims against all Defendants.[1]

## II.  FACTUAL ALLEGATIONS RELEVANT TO THIS MOTION

Plaintiff Henson was a resident of Maryland, and worked for Howard University from 2011 through her termination in 2017. (Compl. ¶1).[2]  Henson worked at the Hospital from 2011 through 2015 and claims she was "seen by her colleagues as a great employee." (Compl. ¶11).  She describes that time period favorably and has not alleged any mistreatment, or problems during that time.

From 2015 through 2017, the time period relevant to the Complaint, Plaintiff worked for the Howard University Faculty Practice Plan in the Mental Health Section (Psychiatry and Behavioral Sciences as Patient Service Representative. (Compl. ¶ 1).[3]  In her Complaint Plaintiff alleges on information and belief    that Defendant Marie Newman, is the current Clinical Practice Supervisor, and Alfred Michael, is the former IT Manager; in point of fact, neither of them presently works for Howard.

Henson claims that from 2015 through 2017 she was subjected to unlawful behavior, violation of her privacy, and "toxic ill will" designed to force her out of her position. (Compl. ¶13).

---

[1]     Plaintiff has not served Co-Defendant Alfred Michael.  All claims against him should therefore be dismissed.  A federal court does not have personal jurisdiction over a defendant unless and until it has been properly served in substantial compliance with Federal Rule of Civil Procedure 4.

[2]     Plaintiff has also filed this action against Howard University Hospital and claims that the Hospital is a private corporation owned and operated by the University.  That is not correct.  The Hospital is an operating unit of the University and is not a separate corporation.  Moreover, Plaintiff does not allege and cannot establish that she worked for the Hospital during the time period at issue in this Complaint.  At all relevant times she was an employee of the University.

[3]     The Howard University Faculty Practice Plan (FPP) is home to the individual outpatient healthcare practices of the Doctors of Howard University.  FPP doctors are professors of the Howard University College of Medicine and represent medical expertise in a vast array of specialties and subspecialties.  (*See* http://healthsciences.howard.edu/healthcare/doctors/about-us)

In support of these allegations, she has attached a series of email messages which deal with concerns over scheduling; employees eating at the reception desk; leaving the desk unattended; lack of structure in the workplace; failure to capturing charges for injectables; concerns about the timing of staff lunch breaks; phones not being answered; staff lack of respect for authority; and a lack of response to her request to terminate an employee.  Plaintiff claims that she was terminated in June 2017, in retaliation for, or in order to cover up her complaints about these routine administrative issues.

After acknowledging that she suffers from mental health issues, including paranoia, (Compl. ¶¶ 42, 77), Plaintiff claims that <u>after she was terminated</u> Howard: continued to spy on her personal cell phone and computer; loaded malware and spyware onto those devices; interfered with her Microsoft online accounts; changed the way her cell phone provided software updates; interfered with her debit card; and even interfered with or "hack[ed]" her Lyft account.  (Compl. ¶¶ 51, 82).  These peculiar conspiracy theories alleged against a not-for-profit University, do not bely any plausible cause of action and require dismissal of her complaint in its entirety with prejudice.

## III.    LEGAL STANDARDS FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6), provides for the dismissal of an action based upon the plaintiff's "failure to state a claim upon which relief can be granted." In essence, a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The Rules require that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a 12(b)(6) motion to dismiss, a court must accept as true all of the well-

pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted).  However, a court "need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Id*.  Nor must the court accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. By the same token, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 218-219 (D.D.C. 2012).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief, dismissal under 12(b)(6) is appropriate. *Iqbal*, 129 S. Ct. at 1950.

A motion to dismiss under FRCP 12(b)(6) also is the vehicle for asserting a claim is barred by the applicable statute of limitations. As this Circuit has held, limitations may be addressed by under Rule 12(b)(6) when the facts that give rise to the limitations defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578, 332 U.S. App. D.C. 182 (D.C. Cir. 1998); *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010).

Dismissal on jurisdictional grounds is governed by Rule 12(b)(1), with respect to many of Plaintiff's far-fetched claims that Howard and its employees monitored her electronics after she was terminated.   It is well-settled law that federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial [sic]

as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (*quoting Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)). Dismissal under 12(b)(1) is appropriate "when the complaint is 'patently insubstantial' presenting no federal question suitable for decision." *Best v. Kelly*, 309 U.S. App. D.C. 51, 39 F.3d 328, 330 (D.C. Cir. 1994) (*quoting Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989)); *accord O'Brien v. United States Dep't of Justice*, 927 F. Supp. 382, 384 (D. Ariz. 1995); *Shoemaker v. United States*, 1997 U.S. Dist. LEXIS 2322, 1997 WL 96543, *5 (S.D.N.Y. 1997); *O'Connor v. United States*, 159 F.R.D. 22, 25 (D. Md. 1994).

As the D.C. Circuit explained some claims not merely doubtful or questionable, but rather are "essentially fictitious" and are therefore patently insubstantial, *See Best*, 39 F.3d at 330.  The kinds of fictitious claims that are subject to dismissal are "bizarre conspiracy theories," fantastic manipulations and other types of imagined interventions. *Carone-Ferdinand v. CIA*, 131 F. Supp. 2d 232, 234, 2001 U.S. Dist. LEXIS 5063, *7-8, *citing Best*.  Where such fictitious and bizarre conspiracies are alleged, the D.C. Circuit has made clear such claims warrant dismissal under Rule 12(b)(1). *Carone-Ferdinand,* 131 F. Supp. 2d at 235.

## IV.   ARGUMENT

### A. Plaintiff's Claims that Howard Committed Torts Regarding her Privacy and Personal Property after her Termination are Fanciful and Fail to set forth a Plausible Claim.

Plaintiff admits in her Complaint that she suffers from mental health issues, including paranoia.  (Compl. ¶¶ 42, 77).  She then goes on to claim, without offering any factual details, that the University and two of its (now former) employees conspired to connect remotely to her personal computer and cell phone, slowed them down, loaded them with malware, and interfered with their operations to the point where she had to replace them.  In support of these claims she

has attached Exhibits which fail to explain or provide support for these bold and fanciful allegations.

This Court has previously held that fantastic and delusional claims about alleged conspiracies that are devoid of any actual evidence clearly warrant dismissal under Rule 12(b)(1). *Carone-Ferdinand v. Central Intelligence Agency*, 131 F. Supp. 2d 232, 232-34 (D.D.C. 2001) (dismissing claims that that the government and the CIA conspired to kill a relative, who they claim was an operative with the CIA, to smuggle cocaine into the United States, assassinate women and children in Mexico, and even assassinate President John F. Kennedy); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 233, 2007 U.S. Dist. LEXIS 22864, *19-20 (D.D.C. 2007) (where plaintiff has only offered a "laundry list of wrongful acts" and conclusory allegations to support her theory of a conspiracy which is insufficient to allow the case to go forward).

Claims such as those presented here by Plaintiff Henson regarding actions that Howard allegedly took to monitor her electronics or interfere with them after she was terminated, are "wholly insubstantial or frivolous" and must be dismissed. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

As the Court eloquently noted when confronted with similarly fanciful claims "[w]hile the complaint may be worth entering in a creative writing contest, it was not worth entering in a court of law" and must therefore be dismissed pursuant to Rule 12(b)(1). *Carone-Ferdinand v. CIA*, 131 F. Supp. 2d at 236.

### B. Plaintiff's "D.C. and Maryland" Tort Claims Should all be Dismissed for Failure to Meet Rule 8 Pleading Standards.

At the motion to dismiss stage, the sufficiency of the complaint must be tested against the applicable law. *Oparaugo v. Watts*, 884 A.2d 63, 69, 2005 D.C. App. LEXIS 501, *7-8. Here Plaintiff's vague and alternative pleading has made that impossible. Plaintiff has plead each of

her tort claims (Counts 1, 2, 3, 4, and 6) under "D.C. and Maryland Law" without pleading which is the proper choice of law for each of her claims.

Her introductory paragraphs state that at the relevant time period she lived in Maryland, and worked in D.C., and that Howard University and Hospital are located in D.C. (Compl. ¶¶ 3-6). Adding to the confusion, in her Complaint's statement of Jurisdiction, she cites only to D.C. law (Compl. ¶¶ 7, 8), and makes no request for this court to exercise pendent jurisdiction over any purported Maryland state law claims. The following pages and pages of delusional factual allegations about alleged tampering with her personal cell phone and computer months or even years after she last worked at Howard make no mention of *where* these events occurred or *which law* she believes applies.

This vague pleading is clearly a violation of Rule 8's requirement that Plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. The failure to plead choice of law, or even address it, and the attempt to simply allege "either or" precludes Defendant from having "fair notice" of Plaintiff's claims, or even from adequately responding to them.[4] Dismissal is appropriate where the complaint is "unclear or . . . fail[s] to give the defendants fair notice of the claims against them." *Ciralsky v. CIA*, 355 F.3d

---

[4]     In determining which jurisdiction's law to apply to tort claims, D.C. Courts have held that a "governmental interests" analysis, should be conducted. *Hercules & Co. v. Shama Restaurant*, 566 A.2d 31, 40-41 (D.C. 1989). Courts consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered. *Id.* When both jurisdictions have an interest, "the forum law will be applied unless the foreign [jurisdiction] has a greater interest in the controversy." 491 A.2d at 509. In addition, the Court is not bound to decide all issues under the law of a single jurisdiction; choice of law involves examination of the various jurisdictional interests as applied to each issue or claim to be adjudicated. *Hercules, supra*, 566 A.2d at 40. *District of Columbia v. Coleman*, 667 A.2d 811, 816, 1995 D.C. App. LEXIS 216, *7-9. For all of these reasons, <u>the Plaintiff must plead choice of law</u> and cannot simply leave this Court and Defendants *guessing* as to her theory of liability.

661, 670, 359 U.S. App. D.C. 366 (D.C. Cir. 2004).  Where a Plaintiff has "presented no viable legal theory" for suing, Defendant is entitled to dismissal. *Rozenblat v. Kappos*, 345 F. App'x 601, 603 (Fed. Cir. 2009).

### C. Plaintiff's Intrusion on Seclusion Claim Should be dismissed as Untimely and for failure to state a claim

Intrusion upon seclusion is one variety of the broader tort of invasion of privacy. *Alvarado v. Rainbow Inn, Inc*., 312 F.R.D. 23, 32, 2015 U.S. Dist. LEXIS 156313, *19-20, 93 Fed. R. Serv. 3d (Callaghan) 1, *citing Wolf v. Regardie*, 553 A.2d 1213, 1216-17 (D.C. 1989).

### 1. Privacy Claims Must Be filed within One Year, and are Therefore Time-Barred

A cause of action for invasion of privacy may be maintained on any one of four theories, including intrusion on seclusion.  *See Grunseth v. Marriott*, 872 F. Supp. 1069, 1074 (D.D.C. 1995); *aff'd*, 1996 U.S. App. LEXIS 3688 (D.C. Cir. Feb. 9, 1996).  D.C. and Federal Courts applying D.C. law have held that the one-year statute of limitations under D.C. Code § 12-301(4), which governs intentional torts, applies to any invasion of privacy claims. *Id*.; *see also Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 10, 2008 U.S. Dist. LEXIS 8266, *20.  Privacy claims brought more than one year after the events in question should be dismissed as barred by one-year statute of limitations. *Paul, supra.*

### 2. Plaintiff Cannot State a Claim for Intrusion on Seclusion at her Place of Work

Intrusion upon seclusion is comprised of three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his/her private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable

person. *Greenpeace, Inc. v. Dow Chemical Co.*, 97 A.3d 1053, 1062 (D.C. 2014) (emphasis added).[5]

Plaintiff's intrusion on seclusion claim is based on her unsubstantiated belief that during her employment Howard monitored the <u>work</u> computer and phone that Howard provided to her in order to perform her job duties. These allegations are based on her bizarre theory that if her computer was slow on a particular day, her phone was forwarded, or an email was missing, it must have been due to deliberate interference by the University and/or its employees, or an attempt to harass her.    Setting aside the entirely ridiculous concept that a University with more than 10,000 students and more than 5,000 employees would seek to monitor electronic devices of an employee who complained about administrative practices and attendance policies, her claims are simply not cognizable or actionable.

Howard has an absolute right to monitor its phones and computers at any time, and employees simply have no personal expectation of privacy regarding their use.  The Employee Handbook is available to all employees, and is publicly available on the University's Policy Webpage.[6]  The Handbook contains a clear policy on the University's electronic systems and equipment:

> In general, Howard University's internet access, computer systems and related equipment are provided to employees for business purposes only. While it is acceptable to use such Howard facilities occasionally for personal reasons, personal usage is a privilege that will be disciplined if excessive or if its content violates any University policy or standard of conduct or ethics or amounts to bullying or unlawful harassment as defined in this policy. **<u>Employees are also reminded that such usage is not private and may be monitored by the University at any time.</u>**

---

[5]      Examples of actionable intrusion include "harassment; peeping through windows or into some other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on private conversations; entering a plaintiff's home without permission or searching his or her belongings; examining a plaintiff's private bank account; or other invasions of that nature." *Wolf*, 553 A.2d at 1217-18.

[6]      http://www.howard.edu/secretary/documents/HowardUniversityEmployeeHandbook-2016.pdf

Employee Handbook, Section 10.13.  Howard also has a specific policy regarding workplace privacy that provides:

> All employees should be mindful of the fact that employers have the right to conduct searches on their property, and Howard University will exercise that right where it deems appropriate. **The University may conduct a search of any person, vehicle or object on University property**, which means any site under University ownership or control.  Specifically, this includes the right to search **desks, office furniture, computers, electronically stored and hard copy files**, lockers, storage areas, baggage, briefcases, handbags, backpacks, parcels, clothing, vehicles and any other articles brought onto or taken from University property, regardless of ownership.  **All employees are advised that if they maintain any private and confidential information or material in the workplace or on University computer systems or networks, its privacy and confidentiality are not assured.**  Please bear this in mind when you decide whether to keep items or information of a personal nature at work.

Howard was very clear, "usage is not private and may be monitored by the University at any time" (10.13), Howard may conduct searches at any time, and that if employees choose to store materials at work "its privacy and confidentiality are not assured." (10.14).  Under such circumstances the law is clear, if employees are on notice that their usage may be monitored, they simply have no right to privacy on their work computer or phone in the first place.  *Lurensky v. Jonwellinghoff*, 2016 U.S. Dist. LEXIS 34239, *62-63.  That is precisely the notice that Howard has provided its employees.  Plaintiff therefore had no expectation of privacy on her work phone, computer or other Howard-owned devices.

Where a plaintiff seeks to base a claim of intrusion on an employer's monitoring of its own workplace, the required element that the invasion be of a place where the plaintiff "has secluded herself" is simply *not established*, as Howard is not a place where she had any expectation of privacy.  *See Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 32, 2015 U.S. Dist. LEXIS 156313, *21 (plaintiff's claim based on video camera in restaurant kitchen did not establish a claim for intrusion on seclusion).

**D.  Plaintiff's Trespass To Chattels Claim Should Be Dismissed.**

Plaintiff claims that under either Maryland or D.C. law, she can recover under a theory of "trespass to chattels" for the property allegedly damaged (her personal cell phone and personal computer) after she left Howard's employ, when Howard "intentionally intermeddled" with her devices, installed malware and spyware, deleted information, and so diminishing her devices as to essentially destroy them since they "stopped working properly" and she had to replace them. (Compl. ¶ 70-73).  As noted above, these allegations are entirely fantastical and should be dismissed for lack of jurisdiction.

They are also subject to dismissal under Rule 12(b)(6).  A trespass to chattel "may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965); see *Pearson v. Dodd*, 133 U.S. App. D.C. 279, 410 F.2d 701, 707 & n.30 (D.C. Cir. 1969) (quoting Restatement language). The dispossession requires physical dispossession or at the very least taking the chattel into the custody by levy of execution or attachment, impounding, or the like; Plaintiff does not contend that Howard actually dispossessed her of her electronic devices. Rather Plaintiff contends that Defendants "intermeddled" with her property; this claim must also fail as intermeddling requires physical contact with the chattel, see RESTATEMENT § 217 cmt. e, § 221 & cmt. g.  Plaintiff has not alleged those facts here, so Plaintiff cannot state a claim.  See *Hornbeck Offshore Transp., LLC v. United States*, 563 F. Supp. 2d 205, 212, 2008 U.S. Dist. LEXIS 49686, *15.

**E.  Plaintiff's Conspiracy Claims (Counts II and IV) Must be Dismissed as she Cannot State a Claim for the Underlying Torts (Intrusion or Trespass to Chattels).**

In the District of Columbia, there is no recognized independent tort action for civil conspiracy.  Rather, civil conspiracy depends on performance of some underlying tortious act.  It

is thus not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort. *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000). *See Hakki v. Zima Co.*, No. 03-CV-9183, 2006 WL 852126, at *5 n.7 (D.C. Super. Mar. 28, 2006) (in D.C. conspiracy is not an independent tort; in order to establish liability of an alleged conspirator, a plaintiff must plead and prove an underlying tort in which the conspirator participated).

Where, as is the case here, the Plaintiff cannot state a viable claim on the underlying torts, the claim for civil conspiracy must also dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 241, 2007 U.S. Dist. LEXIS 22864, *46-47.

### F. Plaintiff's Wiretap Act Claim Should be Dismissed for Failure to State a Claim.

Under 18 U.S.C. § 2520, any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of 18 U.S.C. §§ 2510 *et seq*. may file a civil action and may recover from the person or entity which engaged in that violation.

With respect to Plaintiff's claims that communications at work on her work phone and/or computer were intercepted, Plaintiff fails to state a claim.  In order to prevail on a wiretap claim, an employee needs to prove that her employer intercepted the communications, that she had expectation that her communications were not subject to interception, and that her expectation was justified under circumstances. *Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir.).  Here, as noted above, Plaintiff had no expectation of privacy on the phones at work, as Howard had clearly indicated that all such calls might be monitored at any time. The same is true of her work computer; remote access to an employee's computer or even physical access simply is not actionable under the act. *Expert Bus. Sys. v. Bi4ce, Inc.*, 411 F. Supp. 2d 601,

604, 2006 U.S. Dist. LEXIS 3631, *7 (remote access to computer via remote access software installed with knowledge and implied consent was not sufficient to state a claim under 2520).

In addition, in order to state a claim under §2520, the plaintiff must establish not only that the calls or data were intercepted, but that they were <u>used</u>, recorded or disclosed; listening or accessing alone is insufficient to impose liability for "using" illegally intercepted communications. *Dorris v. Absher*, 179 F.3d 420 (6th Cir. 1999).  In order to state a civil claim under 2520, the Act also requires that those who intentionally intercept and disclose or use the contents of any such illegally intercepted communication, do so "knowing or having reason to know" the communication was intercepted in violation of the Act. 18 U.S.C. § 2511(1)(c) and (d) (emphasis added).  Plaintiff suggests that her supervisor and the then-IT director intercepted communications for the purposes of discrediting her.  However, she fails to allege that they specifically used or disclosed any such communications, or that they knew the interception was prohibited in light of the Wiretap Act. *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992).

With respect to her claims that after she left Howard in 2017, *and for years after that*, Howard and the two named Defendants continued to interfere with her personal cell phone and computer, caused her computer and/or phone to behave oddly or slowly, gave her malware, compromised her Lyft account and was responsible for essentially *every irregularity* and issue she had with her personal electronic devices after she was fired, these claims simply do not meet the basic plausibility standard and should be dismissed. *See Phillips v. Bell*, 365 Fed. Appx. 133 (10th Cir. 2010).

**G.  Plaintiff's Intentional Infliction Of Emotional Distress Claim Must Be Dismissed as Untimely and For Failure To State A Claim**

The applicable statute of limitations for intentional infliction of emotional distress ("IIED") depends on the statute of limitations applied to the underlying common law claims. *See Thomas v.*

*News World Communications*, 681 F.Supp. 55, 72 (D.D.C. 1988); *Burda v. National Association of Postal Supervisors,* 592 F.Supp. 273, 281 (D.D.C. 1984), *aff'd*, 771 F.2d 1555 (D.C. Cir. 1985). Since a one-year statute of limitations applies to plaintiff's invasion of privacy claim, that same statute of limitations applies to the intentional infliction of emotional distress claim, also barring that claim. *Doe v. Southeastern University*, 732 F. Supp. 7, 8, 1990 U.S. Dist. LEXIS 3141, *4. Where the IIED claims are dependent on the same facts that support the claimed intentional torts they are subject to the District of Columbia one-year limitations period. *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 550, 1981 U.S. Dist. LEXIS 13199, *23.

Even if the claim is not untimely, Plaintiff's allegations here do not state a claim as a matter of law. To prove a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress. *District of Columbia v. Thompson*, 570 A.2d 277, 289-90 (D.C. 1990), *cert. denied*, 502 U.S. 942 (1991) (*citing Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.) (quoting Restatement (Second) of Torts § 46 (1965)), *cert. denied*, 459 U.S. 912 (1982). Liability will be imposed only for conduct which exceeds all bounds of decency and for acts which are regarded as "atrocious and utterly intolerable in a civilized community." *Waldon*, 415 A.2d at 1076. Recovery is not allowed merely because conduct causes mental distress. *Thompson*, 570 A.2d at 290. In addition, "generally, employer-employee conflicts do not rise to the level of outrageous conduct." *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211 (D.C. 1997); *Williams v. District of Columbia*, 9 A.3d 484, 494, 2010 D.C. App. LEXIS 727, *23-24.

Here Plaintiff claims that Defendants: shorted her pay, changed her medical benefits and overcharged her for medical benefits, improperly funded her pension,[7] locked her out of her retirement account by making it impossible for her to access PeopleSoft, hacked into her personal computer, hacked into her personal cell phone, deleted information from her devices, installed malware and other software on her personal computer, (Compl. ¶88), micromanaged her (¶ 94), deleted and changed information on her work computers (¶93), ignored and acted "cold" toward her (¶96), and "set her up" for termination (¶98).

Even if the Court were to ignore the sheer implausibility of some of these allegations, they simply do not meet the high bar for establishing 'extreme and outrageous conduct' necessary to state a claim for IIED under D.C. law. *See Smith v. Union Labor Life Ins. Co*., 620 A.2d 265, 270 (D.C. 1993) (employee's dismissal without prior disciplinary procedures does not meet the standard for the tort of intentional infliction of emotional distress); *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997) (holding that allegation that employer fabricated a sexual harassment charge, manufactured evidence to use against him and unjustifiably demoted him, even if true, did not rise to the level of "outrageous conduct" necessary to state a viable claim of intentional infliction of emotional distress, and affirming dismissal of claim); *Crowley v. N. Am. Telcomms. Ass'n*, 691 A.2d 1169, 1997 D.C. App. LEXIS 65, 134 Lab. Cas. (CCH) P58, 291 (dismissing IIED claim made by terminated employee who claimed that supervisor refused to meet with him, ignored him, treated him in a hostile and unprofessional manner, terminated him and defamed him in a manner which caused injury to his business and personal reputation.  Holding

---

[7]     Plaintiff is not even a member of the University's Pension plan, which closed in 2009 and was not open to employees who were hired after that time.

that the circumstances leading to, surrounding and following employee's discharge were insufficient as a matter of law to satisfy the standard for an IIED claim).[8]

As Plaintiff cannot state a viable claim for IIED, that too must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction.

DATED: November 12, 2019                    Respectfully submitted,


_____/s/_____
Ariana Wright Arnold
(D.C. Bar #1031353)
Senior Associate General Counsel
Zachary Shapiro
Associate General Counsel
(DC Bar #1021639    )
HOWARD UNIVERSITY
Office of the General Counsel
2400 Sixth Street, N.W., Suite 321
Washington, D.C.  20059
T:  202-806-2650
F:  202-806-6357
E-mail:  Ariana.Arnold@howard.edu
E-mail: Zachary.Shapiro@howard.edu

---

[8]        In addition, the law of the District of Columbia does not recognize such a cause of action for intentional infliction absent some physical injury. *Douglas v. Pierce*, 707 F. Supp. 567 (D.D.C. 1988); *Williams v. Baker*, 540 A.2d 449 (D.C. 1988); *Doe v. Southeastern University*, 732 F. Supp. 7, 10, 1990 U.S. Dist. LEXIS 3141, *9.  Plaintiff alleges only that she suffered from depression and anxiety and had to seek treatment and medication. (Compl. ¶ 96, 97).

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of November 2019, a copy of the foregoing Defendants'

Motion to Dismiss Plaintiff's Complaint was served electronically via the Court's Electronic Case

Filing system on the following:

Martin F. McMahon, Esq.
1717 K Street, NW
Washington, DC 20006
(202) 862-4343
mm@martinmcmahonlaw.com

Marie Newman
Via counsel


Alfred Michael
c/o University of Maryland
1800 Orleans Street
Baltimore, Md 21287


_____/s/_____
Ariana Wright Arnold