UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BELINDA HENSON,

    Plaintiff,

    v.

HOWARD UNIVERSITY, *et al.*,

    Defendants.

Civil Action No. 19-2734 (JEB)

## MEMORANDUM OPINION

Plaintiff Belinda Henson believes that her former employer and coworkers are engaged in a conspiracy to hack her phones, computers, and personal accounts. She has thus sued Howard University, its former IT manager, and her former supervisor for accessing her personal and work devices without her consent. Defendants now move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. As Henson's sole federal count — under the Federal Wiretap Act — does not survive, the Court declines to exercise supplemental jurisdiction over the remaining claims, which will be remanded to the District of Columbia Superior Court.

### I.    Background

As it must at this stage, the Court assumes the facts pled in the Complaint are true. Henson worked as a Patient Service Representative in the Faculty Practice Plan (FPP) at the Howard University Hospital (HUH). See ECF No. 1-1 (Compl.), ¶¶ 1, 3–4. Shortly after starting, she began to raise issues she observed in the department, including other employees taking long lunches and failing to comply with department procedures, and her supervisor withholding her pay. Id., ¶¶ 11, 13–16.

1

Henson believes that this supervisor, Defendant Marie Newman, did not appreciate that she was reporting these problems and shared that sentiment with the other administrators in the department. Id., ¶¶ 19, 25. After years of listening to Henson's complaints, these administrators "had enough and began conspiring to interfere with Plaintiff's employment relationship and ultimately run her out of the department." Id., ¶ 19. First, she was made to use the official timekeeping system, rather than keep time herself, which meant that she had to walk two blocks to clock in and out of work. Id., ¶ 21. She alleges that fellow employees then became distant or avoided her completely because "the administrators had planted the seeds in the employees' minds that she was a bad employee," and that the cold shoulder from her colleagues would drive her to leave. Id., ¶ 23.

FPP staff then allegedly escalated their plan to force Henson out. She claims that Defendant Alfred Michael, the IT manager for FPP, was directed by Plan administrators to "hack into the Plaintiff's work computer, home computer, and personal cell phone." Id., ¶ 26. By doing so, Henson maintains that Defendants could "remove and change sensitive information," including "emails related to the Plaintiff's reporting . . . of the previously mentioned issues." Id. Monitoring her computer and phone files would help FPP administrators "become familiar with the wide scope of her complaints." Id., ¶ 36.

Henson noticed a variety of circumstances that purportedly evidenced the hacking. At work, a contractor stopped by to upgrade her computer, but stopped in the middle of the hard-drive backup. Id., ¶¶ 34–36. Although Henson states that he promised to wipe the hard drive, she believes that "he did not actually delete the files." Id., ¶ 36. She also had difficulty with her work phone, as calls would have "unexplained echoes," and the phone would display the word "Forwarding." Id., ¶ 27. On her personal devices, Henson claims that the word "[DRAFT]"

2

would appear on her text messages, and that her phone would update and open applications spontaneously. Id., ¶¶ 29–31. Finally, she believes that Defendants were able to gain control of some of her personal accounts, including her bank and Lyft account. Id., ¶¶ 50–52.

Henson initially sued Defendants Howard University, FPP, HUH, Newman, and Michael in the Superior Court of the District of Columbia. Id. at 1. She brought a number of claims, including invasion of privacy, trespass to chattels, intentional infliction of emotional distress, and violations of the Federal Wiretap Act, 18 U.S.C. § 2511, *et seq*. Defendants then removed the case here, asserting jurisdiction under 28 U.S.C. § 1331 for the FWA claim and diversity jurisdiction under § 1332(a). They now move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule 12(b)(6).

## II.     Legal Standard

In evaluating a Motion to Dismiss under Federal Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," or an inference unsupported by the facts set forth in the Complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and

3

should be liberally construed in the plaintiff's favor. See Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quotation marks omitted), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. "The Court does not have to accept asserted inferences or conclusory allegations that are unsupported by facts set forth" in the complaint. See Richards v. Duke Univ., 480 F. Supp. 2d 222, 235 (D.D.C. 2007).

## III. Analysis

The Court begins with Henson's FWA count, which is the only federal claim asserted. In seeking dismissal, Defendants first contend that her allegations are so farfetched as to be "patently insubstantial" and therefore susceptible of dismissal for lack of subject-matter jurisdiction. See ECF No. 9 (Def. MTD) at 6. Alternatively, they assert that Plaintiff's FWA claim is insufficient because it fails to allege that her communications were actually intercepted. Id. at 14. The Court will consider these points separately.

A. Rule 12(b)(1)

Defendants maintain that conspiratorial claims like Henson's must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. Yet, such a dismissal is reserved for claims that are "wholly insubstantial and frivolous" and therefore lack subject-matter jurisdiction to be heard. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

This is not such a case. Claims in this category are not "merely . . . doubtful or questionable, but rather . . . essentially fictitious." Carone-Ferdinand v. CIA, 131 F. Supp. 2d 232, 234 (D.D.C. 2001) (quoting Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994)). Essentially fictitious claims include "'bizarre conspiracy theories,' 'fantastic government manipulations of [one's] will or mind,' and 'any sort of supernatural invention.'" Id. (quoting Best, 39 F.3d at 330). Construing the facts in favor of Henson, it is not entirely "bizarre" or "fantastic[al]" that Defendants may have wanted to monitor or delete her communications after she complained about their alleged misdoings. Id. Dismissal is therefore not warranted under 12(b)(1).

B. Rule 12(b)(6)

To state a claim under the FWA, see 18 U.S.C. § 2520, Henson must establish that Defendants "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." Richards, 480 F. Supp. 2d at 240 (quotation marks omitted); see 18 U.S.C. § 2511(1)(a).

Although Henson's Complaint details the lengths to which Defendants allegedly went to intercept communications on her work devices, her FWA claim relates only to her personal phone, computer, and accounts. See Compl., ¶ 80; ECF No. 11 (Pl. Reply) at 7. The Court,

5

therefore, need not address whether the alleged intrusions on her work phone and computer would constitute actionable conduct for purposes of the FWA.

Looking solely at her personal devices, Henson's allegations are insufficient to state a claim. She alleges that Defendant Michael was directed by FPP's administrators to hack into her computers, cell phones, and accounts using "sophisticated computer and technology skills." Compl. at 2. Specifically, she states that he coordinated with "the help of other members of his IT staff" and "contractors and agents of HU and HUH" to "secretly infiltrate" Plaintiff's devices, id. at 2, ¶ 32, and that he was directed to "remove and change sensitive information and documents," including emails relating to the problems Plaintiff had identified at her job. Id., ¶ 26. The Court looks at the specific allegations related to each device.

Henson first claims that she observed someone hacking her personal computer, moving her cursor "extraordinarily fast." Id., ¶ 48. She also alleges that she watched as someone accessing her personal computer "in real time" deleted information. Id., ¶ 37. Yet neither of these occurrences qualifies as an "interception" within the meaning of 18 U.S.C. § 2511(1)(a).

An "intercept," as defined by the Act, means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Id. § 2510(4). Courts interpreting this provision have narrowed the definition to contemporaneous interception of transmitted information. See Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 (3d Cir. 2003) (interception must be contemporaneous with transmission of communication). In other words, these courts have gone so far as to hold that for information to be "intercepted" within the meaning of the Act, it must be accessed at the same time that the communication is sent. Because Plaintiff has not alleged an acquisition of any particular communication — let alone any contemporaneous acquisition —

6

she fails to plead a necessary element of an FWA claim. See Tantaros v. Fox News Network, LLC, No. 17-2958, 2018 WL 2731268, at *8 (S.D.N.Y. May 18, 2018) (dismissing plaintiff's conclusory allegation that defendant intercepted communications by installing malware on her computer).

Henson next alleges that her personal phone was compromised because the word "[DRAFT]" appeared in her text messages, applications and features previously unused were activated, and she had a phone-update notification that covered her screen. See Compl., ¶¶ 29–30. For substantively similar reasons, Henson again has not alleged that Defendants "intercepted" any of her communications within the meaning of the Act or did so contemporaneously. See Fraser, 352 F.3d at 113; Tantaros, 2018 WL 2731268, at *7.

Finally, Henson believes that her personal accounts have been compromised. She states that her Microsoft Office account was hacked by Defendants, who assigned themselves a "parent" account and changed hers to a "child" account, thereby limiting her access to her email. See Compl., ¶¶ 50–51. Henson additionally claims that her Lyft account was hacked because a foreign PayPal email address was attached to her payment information. Id., ¶ 51. She last believes that Defendants conspired to attack her Bank of America debit card, which was closed because of suspicious activities. Id., ¶ 52.

None of these allegations alleges that her communications were acquired. The mere possibility that Defendants may be able to intercept her communications, by virtue of accessing her accounts, is insufficient to state a claim under the FWA. See Tarantaros, 2018 WL 2731268, at *8 (stating that allegation "support[ing] an inference that Defendants had the capability to intercept . . . communications" was "insufficient to survive a motion to dismiss") (citing Iqbal, 556 U.S. at 678).

7

Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Here, she has offered only conclusory allegations that the technological problems that she faced were the result of a Defendant attempting to control her personal devices and accounts. While Plaintiff need not provide proof at this stage, vague and conclusory statements like this are insufficient. Richards, 480 F. Supp. 2d at 240; Iqbal, 556 U.S. at 679 ("[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth."). Plaintiff's FWA claims, accordingly, do not state a claim for which relief can be granted.

C. Supplemental Jurisdiction

Having found that Henson's only federal claim must be dismissed, the Court is faced with the question of whether it should entertain her remaining counts. Defendants removed the case here asserting both federal-question and diversity jurisdiction under 28 U.S.C. § 1332(a). See ECF No. 1 (Notice of Removal) at 2. The Supreme Court has held that § 1332(a) requires "complete diversity of citizenship," meaning that "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). The Complaint here indicates that Henson and Defendant Alfred Michael are both citizens of Maryland. See Compl. at 1. Diversity is thus lacking.

The Court further declines to exercise supplemental jurisdiction. Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. See 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original

jurisdiction." Id. § 1367(c). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion, as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). When all federal claims "are eliminated before trial," however, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding discretion set out in Carnegie-Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

As this case has not progressed past the initial Motion to Dismiss and the Court has developed no familiarity with the issues presented, it will decline to retain jurisdiction and will instead remand the matter to the Superior Court.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss in part. A separate Order so stating will issue this day, which Order will also remand the matter to Superior Court.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 10, 2020

9